IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Robin L. T., | ) |
| | ) |
|       Plaintiff, | ) |
| | )   Case No.: 23-cv-50213 |
| v. | ) |
| | )   Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**AMENDED MEMORANDUM OPINION AND ORDER[1]**

Plaintiff, Robin L. T., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [13] is granted and the Commissioner's motion for summary judgment [19] is denied. This matter is remanded to the Commissioner for further proceedings consistent with this Order.

**BACKGROUND**

**A.**    **Procedural History**

On February 19, 2019, Robin L. T. ("Plaintiff") protectively filed an application for disability and disability insurance benefits. R. 18. This application alleged a disability beginning on September 20, 2015. *Id.* The Social Security Administration ("Commissioner") denied her application on April 5, 2019, and upon reconsideration on September 9, 2019. *Id*. Plaintiff filed a written request for a hearing on September 17, 2019. *Id*. On August 19, 2020, a telephonic hearing was held by Administrative Law Judge ("ALJ") Kevin W. Fallis where Robin L. T. appeared and testified. Plaintiff was represented by counsel. *Id.* At the hearing, an impartial vocational expert, James M. Fuller, also testified. *Id*.

On September 16, 2020, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 27-38. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 4-9. Plaintiff sought judicial review of the ALJ's decision with a complaint in this Court filed on February 22, 2021. The Commissioner's decision was remanded by agreement on January 28, 2022. *See Robin T. v. Kijakazi*, Case No. 21 C 50078 [18] (N.D. Ill. Jan. 28, 2022). On the agreed remand, a telephonic hearing was held by ALJ Fallis on January 26, 2023. R. 663. Plaintiff, represented by counsel, appeared and testified. An impartial vocational expert, Judith Findora, also testified. *Id*. On March 9, 2023, the ALJ issued his written opinion denying Plaintiff's claims for disability benefits. R.

---

[1] This Order amends the Court's Order of July 3, 2025 [25].

663-675. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's brief in support of her motion to reverse and remand the Commissioner's decision [13], the Commissioner's motion for summary judgment, and response to Plaintiff's brief [19], and Plaintiff's reply brief [22].

### B. The ALJ's Decision

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 20, 2015, through her date last insured of December 31, 2020. R. 666. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, lumbar spine and cervical spine; degenerative joint disease, right hip; carpal tunnel syndrome; neuropathic pain; rheumatoid arthritis; osteoarthritis; fibromyalgia; hypoglycemia; irritable bowel syndrome; palpitations; periodic headache syndrome; and migraine. *Id.* The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id.* The ALJ also found that Plaintiff had a medically determinable mental impairment of depression but found that it did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and, therefore, was determined to be non-severe. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 667-68.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work, except that she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. Plaintiff can frequently balance, occasionally reach overhead with the right upper extremity, and can perform frequent handling and fingering of objects. Plaintiff must avoid concentrated exposure to vibration, avoid concentrated expose to extreme cold and be exposed up to a moderate noise level. She cannot work in direct sunlight and must avoid concentrated use of hazardous moving machinery and avoid all exposure to unprotected heights. R. 668-73. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 673-75. At step five, the ALJ found that Plaintiff had not been under a disability under the Social Security Act at any time from September 20, 2015, through date last insured, December 31, 2020. R. 675.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high."

*Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues the ALJ: (1) failed to evaluate her non-severe mental impairments in the RFC; (2) failed to properly consider Plaintiff's subjective symptoms; and (3) erred in evaluation of the opinion evidence. The Court concludes that the ALJ failed to offer an adequate explanation as to why no mental limitation was included in Plaintiff's RFC, and therefore, reverses and remands the ALJ's decision on that issue. As to Plaintiff's subjective symptoms and opinion evidence analysis, the Court finds the RFC assessment and ALJ findings were well-supported by substantial evidence.

### A. Non-severe mental impairment

First, Plaintiff argues that the ALJ erred in her RFC determination by failing to account for Plaintiff's non-severe mental health impairments. The totality of Plaintiff's argument is that "without any explanation as to how [Plaintiff's] mental limitations factored into the RFC determination, the reader cannot trace the path of [the ALJ's] reasoning for not including mental limitations in the RFC." [13], p. 4.

The Court notes that "[a]n impairment or combinations of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activity." 20 C.F.R. § 404.1522(a). At step 2 in the analysis, the ALJ found that Plaintiff's medically determinable mental impairment of depression did not cause more than minimal limitation in her ability to perform

3

basic work activities and, therefore, would be considered non-severe. R. 666. In his decision, the ALJ notes that he came to this conclusion after considering the four areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listings of Impairments at 20 C.F.R. Part 404, Subpart P., Appendix 1. The ALJ found that Plaintiff's mental impairments were mild. R. 666-67. The decision notes that Plaintiff could perform simple maintenance, read and watch television, and was alert and oriented with an appropriate mood and affect. R. 666. Plaintiff had normal memory, judgment, and thought content and had no limitations when interacting with others. *Id*. She reported she was happy living at home with her husband and three adult children. Plaintiff was described in medical records as polite, appropriate, pleasant, and cooperative, with normal speech and behavior. *Id*. The ALJ concluded at step 2 that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." R. 667.

In the RFC analysis, the ALJ found the statements and opinions of state agency consultants Donna Hudspeth, PsyD and Joe DeLoach, PhD persuasive. R. 672. The consultants reviewed evidence of record in April and August of 2019. They concluded that Plaintiff's mental impairment was non-severe, and she had mild limitations in understanding, remembering, or applying information, and no limitations in interacting with others. They found she had mild limitations in concentration, persistence, and maintaining pace, as well as in adapting and managing herself. *Id*.

The ALJ is obligated to consider "all of [the claimant's] determinable impairments of which [the ALJ] is aware, including [claimant's] medically determinable impairments that are not 'severe,' when [the ALJ] assess[ses] [claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(2). The regulations do not require that the ALJ then find that a non-severe impairment would impose a work restriction, but the ALJ is still required to explain how he arrived at that conclusion. *Barbara S. v. Kijakazi*, Case No. 2:21-cv-00224-DLP-JRS, 2022 WL 4244306, at *10 (S.D. Ind. Sept. 15, 2022) ("The ALJ's mere mention of Barbara's anxiety and the conclusion that 'the opinions from the psychiatric consultants are persuasive' is insufficient."). Here, the RFC includes no mental limitations. Additionally, the RFC analysis fails to explain why these non-severe impairments, found at step 2 and repeated again at the RFC step, warrant no limitation. "Courts have consistently found that an ALJ errs by failing to account for mild mental limitations resulting from a claimant's mental impairment when assessing the individual's mental RFC." *Id*. While the ALJ is not required to account for a non-severe or mild limitation in the RFC, the ALJ is required to "explain why he concluded, if he indeed did so conclude, that Claimant's mild limitation…did not affect his work functionality such that the ALJ did not need to include any corresponding restrictions in the RFC." *Alonzo v. O'Malley*, 757 F.Supp.3d 822, 827 (N.D. Ill. Nov. 18, 2024). Here, the ALJ failed to provide any explanation as to why no mental limitation needed to be included in the RFC, despite the recognition that Plaintiff had mild mental limitations. For these reasons, the Court finds that the ALJ failed to build a logical bridge from the evidence revealing Plaintiff's non-severe mental health limitations to the ALJ's conclusions at the RFC stage. This matter is remanded on this issue. On remand, the ALJ must either incorporate mental limitations into the RFC or sufficiently explain why such limitations are not necessary.

    **B.**    **Subjective Symptom Analysis**

4

Next, Plaintiff argues that the ALJ erred in the subjective symptom analysis regarding Plaintiff's fibromyalgia, migraine headaches, and hand and finger limitations.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); Social Security Ruling 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation.

First, Plaintiff argues that the ALJ erred by summarizing Plaintiff's testimony and selective parts of the medical record. However, "[a]n ALJ need not discuss every detail in the record as it related to every factor. Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate." *Grotts*, 27 F.4th at 1278. The Court notes that the ALJ's record review is detailed and comprehensive. The ALJ also set out Plaintiff's subjective statements in detail. The decision notes that Plaintiff testified that she stopped working due to pain and fatigue; had constant all over pain; migraine headaches causing nausea and vomiting; increasing abdominal pain from IBS once or twice a week; medication administration that made her drowsy; had difficulty sleeping at night and therefore had to lie down about 6 hours during the day; and experienced right hand swelling and dropped things in both hands. R. 669. However, the ALJ also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence. *Id.*

The ALJ's decision then detailed Plaintiff's medical record evidence, first noting that in 2015, while Plaintiff complained of migraines and fibromyalgia pain, she reported during a pain center consultation in October 2015 that she walked one mile every day and performed recommended exercises. R. 669. Her pain clinic records from 2016 showed she reported improvements with medication changes. She was able to drive and cook, and while her activities were slow on some days, she reported maintaining walking, trampoline bouncing, pool activities, and traveling to Florida. R. 669-70. In November 2018, as included in the ALJ's decision, Plaintiff reported going to the pain clinic for fibromyalgia but was unhappy with her care and complaint of feeling terrible since discontinuing her medications. R. 670. However, she exhibited no pain or impaired range of motion on examination and had normal reflexes. She also reported doing housework, reading, and using an exercise machine 15 minutes per day. *Id.* At that time, she was restarted on medication. *Id.* As to Plaintiff's migraine complaints, Plaintiff attended a neurology consultation in January 2019. She rated her pain as an 8-9/10, occurring approximately 3 times per month. *Id.* Examination showed no cranial nerve deficit and normal muscle tone. Gait and coordination were normal. In October 2019, Plaintiff reported a significant reduction in migraines with medication. In January 2020, physical examination showed normal muscle tone, nose-finger test, gait, and coordination. Plaintiff reported swimming 3 times per week but noted difficulty

5

sleeping. May 2020 rheumatology records showed an increase in medication was helpful with no side effects. *Id*.

The ALJ's decision also analyzed Plaintiff's back and leg pain. In March 2017, an MRI of Plaintiff's lumbar spine revealed only minimal degenerative changes with no disc herniation or significant narrowing at any level. R. 670. In March 2018, Plaintiff's global body pain was reported to be stable and well managed. The following month, Plaintiff reported chronic right hip and leg pain. Right hip x-rays at that time showed mild degenerative changes and physical examination continued to show normal range of motion and no edema. *Id*. In June 2020, physical examination showed Plaintiff's musculoskeletal system in good range of motion and strength at 5/5 in her extremities. *Id*. While Plaintiff complained of lower back tenderness, examination showed no swelling, clubbing, or edema. Plaintiff's cranial nerves were grossly intact with intact sensation and reflexes. R. 671. In September 2020, Plaintiff reported back pain at 4/10. On examination, Plaintiff had no peripheral edema or extremity lymphadenopathy. *Id*. She had a good range of motion and strength at 5/5. A course of physical therapy was recommended. Plaintiff reported that she was walking for physical activity and recently started a new headache medication which was working well. *Id*. In December 2020, Plaintiff was examined for thyroid function on subjective complaints of low back tenderness. Her exam was unremarkable with good musculoskeletal range of motion and full strength. Plaintiff's sensation and reflexes were intact with no swelling noted. *Id*. Regarding Plaintiff's IBS complaints, Plaintiff presented in August 2018 with 3-4 months of symptoms including diarrhea and constipation. She was provided with medication. Further records showed she tolerated the medication well.

Following this detailed medical review, the ALJ found that Plaintiff's subjective symptoms regarding the intensity, persistence, and limiting effects of her symptoms were not fully consistent with the medical evidence of record. R. 671. Based on the ALJ's review of Plaintiff's activities of daily living, as well as medical records showing general improvements with treatment and medication, the Court finds that the ALJ's subjective evaluation fully explained and supported and not patently wrong. *Grotts*, 27 F.4th at 1279.

### C. Evaluation of medical opinion evidence

Finally, Plaintiff argues that the ALJ erred in evaluating the opinion evidence. Plaintiff contends that the ALJ erred in his assessment of the medical opinion evidence provided by Dr. Liang, Dr. Karri, and Dr. Reddy. She further argues that the ALJ erred in evaluating third-party statements of Jeffrey T.

Regarding the medical opinion evidence, the ALJ is advised to consider a variety of factors in evaluating medical opinions and must "[e]xplain how [he] considered the supportability and consistency factors" in particular. *See* 20 C.F.R. § 404.1520c(b)(2); *Bakke v. Kijakazi*, 62 F.4th 1061, 1067-68 (7th Cir. 2023) (affirming that under § 404.1520c(b)(2), an ALJ must consider supportability and consistency of medical opinions). In considering the supportability and consistency of a medical opinion, "[a]n ALJ need only minimally articulate[ ] h[is] reasoning for the persuasiveness of the medical opinion." *Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)) (internal quotations omitted). The ALJ here adequately articulated his consideration of the supportability

6

and consistency factors.

As to Plaintiff's rheumatologist, Dr. Liang, the ALJ found his opinion non-persuasive. Dr. Liang completed an RFC questionnaire in December 2022. The ALJ found this not persuasive because it did not cover the relevant time period of September 20, 2015, through the date last insured of December 31, 2020 and did not indicate any functional limitations relating back to the relevant time period. As noted in *Zoch v. Saul*, "[t]he ALJ explained that he rejected [medical] opinions because their treatment and diagnosis fell outside the relevant disability period. We typically expect an ALJ to consider an opinion by a doctor who treated the claimant after the relevant period if it offers a retrospective diagnosis that is corroborated by evidence produced during the relevant period. But the physicians who treated [plaintiff] after [the relevant time period] offered only current diagnoses and work limitations, so the ALJ's rejection was not flawed." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Such is the case here. Because Plaintiff's condition worsened after the relevant time period (leading to new diagnoses), the ALJ did not err by finding Dr. Laing's 2022 opinion not persuasive.

The ALJ afforded partial weight to the opinion of Dr. Karri. Dr. Karri examined Plaintiff in August 2019. Dr. Karri examined Plaintiff in relation to Plaintiff's complaints of fibromyalgia, IBS, migraines, and history of knee pain. The ALJ found Dr. Karri's statements based on examination partially persuasive as they were mostly consistent with the hearing level evidence. However, Dr. Karri did not provide any functional limitations and, therefore, no opinion as it would relate to Plaintiff's RFC. R. 672. However, Dr. Reddy reviewed Plaintiff's August 2019 records and concluded that Plaintiff was limited to a reduced range of light work. *Id*. The ALJ found this opinion persuasive as it was supported by objective findings on spine MRIs, x-rays, and examinations. The ALJ further found that the limitations were consistent with consultative examination findings showing decreased upper extremity strength and trigger points. Further limitations were found in hazards, heights, and noise, due to Plaintiff's reports of migraines and fibromyalgia triggered by cold weather. *Id*. Plaintiff's argument that there is "no rationale as to the light work determination" from Dr. Reddy's findings (based in part on Dr. Karri's examination) is unsupported. The Court finds substantial evidence to support the ALJ's conclusions as to the medical evidence and, as noted above, will not "replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence…[T]he court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

Finally, Plaintiff argues that the ALJ failed to provide adequate analysis as to what weight he gave the third-party report of Jeffrey T. In his decision, the ALJ stated he considered the third-party report of Plaintiff's spouse – Jeffrey T. – in crafting Plaintiff's RFC. The ALJ acknowledged that Jeffrey T.'s report "offered insight into how the claimant's impairments affect the claimant's functioning." R. 673. Jeffrey T.'s report was considered with the evidence from other nonmedical sources. *Id*. The ALJ did not rely on nonmedical source evidence in evaluating Plaintiff's RFC. *Id*. While family members and friends may provide information from which an ALJ "may draw inferences and conclusions about an individual's statements that would be helpful to [an ALJ] in assessing the intensity, persistence, and limiting effects of symptoms," SSR 16-3p, and ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. 404.1520c(d). For these reasons, Plaintiff's argument is unavailing.

7

As noted above, the Court finds that the ALJ failed to properly explain why no mental limitations were included in Plaintiff's RFC. For this reason, the Court remands this matter for further proceedings. The Court does find that the ALJ adequately considered Plaintiff's subjective symptoms and did not err in evaluation of the opinion evidence.

## CONCLUSION

Plaintiff's motion to reverse and remand the Commissioner's decision [13] is granted and the Commissioner's motion for summary judgment [19] is denied. This matter is reversed and remanded to the Commissioner consistent with this Order.

Date: October 6, 2025  ENTER:

_Margaret J. Schneider_
United States Magistrate Judge